Julie and Emilio MORENO, Plaintiffs and Appellees,

v.

BOARD OF EDUCATION OF THE JORDAN SCHOOL DISTRICT, Jordan School District, and John Does I–X, Defendants and Appellees.

Laura Bartlett, individually and as representative of the heirs of Bill Bartlett, deceased, Intervenor and Appellant.

No. 950185.

Supreme Court of Utah.

Nov. 8, 1996.

Julian D. Jensen, Salt Lake City, for plaintiffs.

Jan Graham, Atty. Gen., Donald H. Hansen, Brent A. Burnett, Asst. Attys. Gen., Salt Lake City, for school district parties.

Richard I. Ashton, David A. Wilde, Murray, for intervenor.

RUSSON, Justice:

Laura Bartlett appeals from the trial court's denial of her motion to intervene in the action for wrongful death of her minor son Bill Bartlett, brought by her son's legal custodians and guardians, Julie and Emilio Moreno, against the Board of Education of the Jordan School District and the Jordan School District (collectively, the School District). The trial court denied Bartlett's motion to intervene on the ground that the Morenos, not Bartlett, were the real party in interest. The trial court further concluded that any residual parental rights Bartlett had after losing custody of her son terminated at her son's death. We reverse.

## FACTS

Julie and Emilio Moreno provided foster care for Bill Bartlett commencing approximately March 1983, when he was five years old. In November 1991, by order of the Third District Juvenile Court, the Morenos were awarded permanent custody and guardianship of Bill. However, the Morenos never adopted Bill, nor were Bill's mother's parental rights terminated. Bill resided with the Morenos for approximately nine years until his death in June 1992 after drowning in the swimming pool at West Jordan Middle School.

In December 1992, the Morenos filed a notice of claim with the School District pursuant to the Utah Governmental Immunity Act, Utah Code Ann. §§ 63–30–1 to –38, alleging that the negligence of the School District and its employees proximately caused Bill's death. Further, the Morenos claimed that as Bill's legal and exclusive guardians, they were entitled to bring an action and recover damages in their own behalf for Bill's wrongful death pursuant to section 78–11–6 of the Utah Code. That section provides:

> [A] parent or guardian may maintain an action for the death or injury of a minor child when the injury or death is caused by the wrongful act or neglect of another.

The Morenos sought special medical damages in the amount of $87,543.39, funeral and personal losses of $10,000, and compensation for loss of love, affection, comfort, and society in the amount of $750,000. The notice of claim did not name—or even mention—Bill's natural mother, Laura Bartlett.

In September 1993, the School District denied the Morenos' claim on the basis that a guardian is not permitted to recover for the wrongful death of a ward and, further, that a guardian's appointment terminates upon the death of the ward. The Morenos subsequently filed a civil complaint in district court against the School District, alleging that its negligent acts and policies had proximately caused Bill's wrongful death. The Morenos further alleged that as Bill's permanent legal guardians and custodians, they were bringing this action in their own behalf pursuant to section 78–11–6. Again, Bill's natural mother was not named or joined in the complaint.

In January 1994, the School District moved for summary judgment. It alleged that the Morenos had no legal standing to bring their wrongful death action because they were not Bill's heirs, but merely his guardians.

In January 1995, during the pendency of the School District's motion for summary judgment, Bartlett moved to intervene in the action pursuant to rule 24(a) of the Utah

Rules of Civil Procedure, claiming that she, as Bill's natural mother, was the real party in interest and that the Morenos were not. The School District opposed the motion, arguing that Bartlett's claim was time-barred for failure to file a timely notice of claim as required by the Utah Governmental Immunity Act. The Morenos also opposed Bartlett's motion, asserting that under section 78–11–6, either a parent *or* a guardian can bring a claim in their own behalf for the wrongful death of a minor, but not both. In addition, the Morenos argued that they were, in fact, Bill's true "parents" and care-givers and, furthermore, that Bartlett had abandoned Bill many years before. Thus, they argued, Bartlett's motion to intervene should be denied.

In March 1995, the trial court denied the School District's motion for summary judgment against the Morenos, holding that the Morenos had the authority to bring this wrongful death action in their own behalf. The trial court also denied Bartlett's motion to intervene as a party plaintiff, reasoning that the Morenos, not Bartlett, were the real party in interest in the wrongful death action by virtue of their permanent custody and guardianship of Bill and that even if Bartlett had retained parental rights after the Morenos were awarded permanent custody and guardianship, those rights terminated at Bill's death. Bartlett now appeals from the trial court's denial of her motion to intervene. The School District did not appeal from the denial of its motion for summary judgment but is an appellee in Bartlett's appeal.

On appeal, Bartlett argues that only an heir, not a guardian, can recover for the wrongful death of a minor child and, thus, the trial court erred in denying her motion to intervene in the action. Bartlett further argues that the Morenos had acted as her representative in filing their claim against the School District and, therefore, under rules 17 and 24(a) of the Utah Rules of Civil Procedure, her intervention is timely and proper. Finally, she asserts that a neglectful parent is not barred from recovery for the wrongful death of her child, although issues of neglect may bear upon the damages she is entitled to recover.

The Morenos respond that as Bill's guardians, they have a right to recover in their own behalf under section 78–11–6 for the wrongful death of their minor ward. In addition, they argue that an abandoning natural parent should be precluded from recovering under a wrongful death statute for the death of her abandoned child.

The School District responds that the Morenos cannot personally recover damages in their own behalf for Bill's wrongful death because (1) only heirs can recover for the wrongful death of a child, and guardians are not heirs, and (2) Bartlett's parental rights had never been terminated and she was still Bill's rightful heir and thus entitled to bring an action as Bill's heir. However, the School District argues that Bartlett's claim was barred for failure to timely file a notice of her claim as required by the Utah Governmental Immunity Act and, therefore, the trial court lacked jurisdiction over her claim.

## ANALYSIS

■ The issue before us is whether the trial court erred in denying Bartlett's motion to intervene in the Morenos' action pursuant to rule 24(a) of the Utah Rules of Civil Procedure.

> By the terms of [rule 24(a)], an applicant must be allowed to intervene if four requirements are met: 1) the application is timely; 2) the applicant has an interest in the subject matter of the dispute; 3) that interest is or may be inadequately represented; and 4) the applicant is or may be bound by a judgment in the action.

*Lima v. Chambers,* 657 P.2d 279, 282 (Utah 1982). Such a determination may involve questions of both law and fact. We review a trial court's legal conclusions nondeferentially for correctness and its factual determinations for clear error. *State v. Pena,* 869 P.2d 932, 936 (Utah 1994).

■ Section 78–11–6 of the Utah Code establishes who may be a plaintiff in an action to recover for the wrongful death or injury of a child. This section provides in relevant part:

> [A] parent or guardian may maintain an action for the death or injury of a minor

child when the injury or death is caused by the wrongful act or neglect of another.

In interpreting section 78–11–6, this court is guided by the principle that a statute is generally construed according to its plain language. *State v. A House and 1. 37 Acres of Real Property located at 392 South 600 East,* 886 P.2d 534, 537 (Utah 1994). We assume that "each term in the statute was used advisedly; thus the statutory words are read literally, unless such a reading is unreasonably confused or inoperable." *Savage Indus., Inc. v. Utah State Tax Comm'n,* 811 P.2d 664, 670 (Utah 1991). In addition, "[w]ords and phrases are to be construed according to the context and the approved usage of the language." Utah Code Ann. § 68–3–11. "Only when we find ambiguity in the statute's plain language must we seek guidance from the legislative history and relevant policy determinations." *World Peace Movement of Am. v. Newspaper Agency Corp.,* 879 P.2d 253, 259 (Utah 1994). Finally, " '[o]ne of the cardinal principles of statutory construction is that the courts will look to the reason, spirit, and sense of the legislation, as indicated by the entire context and subject matter of the statute dealing with the subject.' " *Mountain States Tel. & Tel. Co. v. Payne,* 782 P.2d 464, 466 (Utah 1989) (quoting *Masich v. U.S. Smelting,* 113 Utah 101, 108, 191 P.2d 612, 616 (1948)).

■ Section 78–11–6 states that a parent or guardian may maintain an action for the wrongful death of a child. The section is silent, however, on whether a guardian may maintain an action in his own behalf or only in behalf of the child's heirs. Thus, we look to adjacent provisions for guidance in interpreting this section. *See Berrett v. Purser & Edwards,* 876 P.2d 367, 369 (Utah 1994) (examining preceding section to interpret scope of particular term).

Section 78–11–7 of the Utah Code provides for recovery for the death or injury of an adult. This section is more explicit as to who can bring a claim. This section provides in relevant part:

> [W]hen the death of a person not a minor is caused by the wrongful act or neglect of another, his heirs, or his personal representatives for the benefit of his heirs, may maintain an action for damages against the person causing the death.... If such adult person has a guardian at the time of his death, *only one action can be maintained for the injury to or death of such person, and such action may be brought by either the personal representatives of such adult deceased person, for the benefit of his heirs, or by such guardian for the benefit of his heirs as provided in the next preceding section [section 78–11–6].* In every action under this and the next preceding section [section 78–11–6] such damages may be given as under all the circumstances of the case may be just.

Utah Code Ann. § 78–11–7 (1992) (emphasis added).

Under section 78–11–7, it is clear that the wrongful death action of an adult can be maintained only by the deceased's heirs or by the representative or guardian of such person *in behalf of* the heirs. Further, section 78–11–7 states that the action may be brought by the guardian in behalf of the heirs "as provided in the next preceding section [section 78–11–6]." Thus, the provisions regarding who may sue and in whose behalf they may recover under section 78–11–7 apply to suits under section 78–11–6 by explicit reference to that section in section 78–11–7. *See also Jones v. Carvell,* 641 P.2d 105, 107 (Utah 1982) (applying language from section 78–11–7 to determine scope of damages recoverable for wrongful death of child).

This interpretation comports with the statutes concerning the rights and obligations of parents in contrast to the rights and obligations of guardians with respect to their ward. "The court may appoint a guardian for an unemancipated minor if all *parental rights of custody* have been terminated or suspended by circumstances or prior court order." Utah Code Ann. § 75–5–204 (emphasis added). However, even after the parental right of custody has been terminated and physical custody of the child is placed in a guardian, the parent retains certain rights with respect to the child:

> "Residual parental rights and duties" means those rights and duties remaining with the parent after legal custody or guardianship, or both, have been vested in

another person or agency, including, but not limited to, the responsibility for support, the right to consent to adoption, the right to determine the child's religious affiliation, and the right to reasonable visitation unless restricted by the court. If no guardian has been appointed, "residual parental rights and duties" also include the right to consent to marriage, to enlistment, and to consent to major medical, surgical, or psychiatric treatment.

Utah Code Ann. § 78–3a–2(18) (1992). Other residual parental rights include the right to inherit from a child and vice versa, Utah Code Ann. § 75–2–103, and the right to maintain an action for the wrongful death of a child, Utah Code Ann. § 78–11–6. *See also In re J.P.*, 648 P.2d 1364, 1366 n. 1 (Utah 1982) (enumerating residual parental rights). Thus, the parent retains the responsibility to support the child as well as certain rights including the right to visitation, allowing the parent the possibility of maintaining a meaningful relationship with the child despite lack of physical custody. Furthermore, there is a distinct procedure for the termination of all parental rights. *See* Utah Code Ann §§ 78–3a–401 to –414 (Supp.1996).

On the other hand, the rights and responsibilities of a guardian are premised on the right to physical custody of the child:

"Legal custody" means a relationship embodying the following rights and duties:

(a) the right to physical custody of a child;

(b) the right and duty to protect, train, and discipline him;

(c) the duty to provide him with food, clothing, shelter, education, and ordinary medical care;

(d) the right to determine where and with whom he shall live; and

(e) the right, in an emergency, to authorize surgery or other extraordinary care.

Utah Code Ann. § 78–3a–2(14) (1992); *see also* Utah Code Ann. § 75–5–209 (powers and duties of guardian of minor).

Furthermore, "[a] guardian's authority and responsibility terminates ... upon the minor's death, adoption, marriage, or attainment of majority, but termination does not affect his liability for prior acts [or] his obligation to account for funds and assets of his ward." Utah Code Ann. § 75–5–210. Thus, while the guardian retains such general duties as accounting for the ward, no personal rights or responsibilities of the guardian continue after the ward's death.

■ Consistent with section 75–5–210, we hold that while the rights and responsibilities of a guardian flowing out of legal custody of the ward terminate upon the death of the ward, the guardian's ability to maintain an action for the wrongful death of a minor flows from the guardian's residual duty of accounting and does not terminate upon the minor's death. This obligation is not for the personal benefit of the guardian, but is among a guardian's residual duties upon the death of his ward, and therefore any wrongful death action must be brought in behalf of the ward's heirs. Accordingly, we find that the Morenos' argument that they can maintain an action for Bill's wrongful death in their own behalf is not supported by the statutes at issue.

■ The School District argues that even though Bartlett is the real party in interest, her claim is barred for failure to file a notice of claim within one year of the injury, pursuant to the Utah Governmental Immunity Act. Therefore, it argues, we should affirm the trial court's denial of her motion to intervene on this ground. Although the School District raised this argument below, the trial court denied Bartlett's motion on the basis that the Morenos, not Bartlett, were the real parties in interest in this action. However, we may affirm the trial court's decision on any ground. *White v. Deseelhorst*, 879 P.2d 1371, 1376 (Utah 1994).

Bartlett argues that the notice of claim filed by the Morenos was filed in a representative capacity for and in behalf of Bill's heirs and, thus, the School District was notified of her claim pursuant to the requirements of the Utah Governmental Immunity Act. Bartlett additionally argues that pursuant to rule 17 of the Utah Rules of Civil Procedure, she may be substituted for the Morenos as a party in the wrongful death action, thereby also substituting herself as the claimant un-

der the Act. The School District argues, on the other hand, that strict compliance with the Act requires that Bartlett independently file a notice of her claim and that Bartlett cannot evade compliance with this requirement by intervening in the Morenos' action.

Section 63–30–13 of the Utah Governmental Immunity Act provides:

A claim against a political subdivision, or against its employee for an act or omission occurring during the performance of his duties, within the scope of employment, or under color of authority, *is barred unless notice of claim is filed* with the governing body of the political subdivision *within one year* after the claim arises.

(Emphasis added.)

In this case, the School District is a political subdivision. *See* Utah Code Ann. § 63–30–2(7) (defining "[p]olitical subdivision" to include "school district"). Bill's injury occurred on May 22, 1992, and he died on June 2, 1992. Thus, prior to bringing the action for Bill's wrongful death, the Morenos, if they were the appropriate party, were required under the Act to file a notice of claim with the School District within one year of his death, i.e., by June 2, 1993. *See Nelson v. Logan City*, 103 Utah 356, 368–69, 135 P.2d 259, 265 (1943) (holding that statute begins to run on date of death for wrongful death claim). The Morenos complied with the notice requirement by filing a notice of claim with the School District on December 3, 1992. However, Bartlett did not independently file a notice of claim with the School District and did not move to intervene in the Morenos' action until January 1995, well beyond the time permitted by the statutory notice requirement. Thus, the resolution of this issue turns on whether the Morenos' notice of claim satisfies Bartlett's notice requirement under the Act.

The Governmental Immunity Act has been strictly construed by Utah courts. In *Scarborough v. Granite School District*, 531 P.2d 480, 482 (Utah 1975), this court stated in reference to the notice requirement under the Act, "We have consistently held that where a cause of action is based upon a statute, full compliance with its requirements is a condition precedent to the right to maintain a suit."

Bartlett argues that because the Morenos filed notice of their claim, the School District was properly notified as to her claim. However, the Morenos' notice of claim clearly states that the Morenos sought to maintain a claim in their own behalf, not in a representative capacity for Bartlett or Bill's heirs. In fact, the Morenos' notice of claim specifically states:

[T]he Morenos, as the sole and exclusive guardians and foster parents for the minor child, are fully entitled to bring an action for wrongful death pursuant to the provisions of Utah Code Annotated § 78–11–6. The Morenos are further convinced that the Utah law will entitle *them* to recover damages for all monetary amounts incurred by them related to the accident and for the loss of the love, affection, and society of the minor child.

While it is difficult to measure such losses, we have attempted to itemize below the losses which we believe *the Morenos, as the legal and exclusive guardians, and in loco parentis, are entitled to recover.*

(Citation omitted; emphasis added.) Further, the notice of claim, which included a copy of the order awarding permanent custody and guardianship of Bill to the Morenos, does not even mention Bartlett.

Moreover, the School District clearly denied the Morenos' claim on the basis that they brought the claim in their own behalf, not on Bartlett's behalf. The letter of denial stated that "(1) a guardian is not an heir of the minor and is not entitled to inherit a share of the minor's estate when the minor dies, and (2) the appointment of a guardian terminates upon the minor's death."

Therefore, this author would conclude that the notice of claim filed by the Morenos for damages in their own behalf clearly was not sufficient to notify the School District of Bartlett's claim. However, a majority of the court agrees with Justice Howe's separate opinion that the notice provided by the Morenos was legally sufficient to notify the School District of Bartlett's claim.

## CONCLUSION

We reverse the trial court's denial of Bartlett's motion to intervene and hold that Bartlett, not the Morenos, is the real party in interest. We further hold that the notice provided by the Morenos was legally sufficient to notify the School District of Bartlett's claim. Accordingly, we remand for further proceedings consistent with this opinion.

ZIMMERMAN, C.J., concurs.

HOWE, Justice, separate opinion:

I concur in that part of the lead opinion which holds that when a guardian brings a wrongful death action for the death of his ward, it is brought on behalf of the ward's heirs and not for the personal benefit of the guardian. However, I dissent as to that part which holds that the instant action brought by the Morenos must be dismissed because the notice of claim given to the School District was defective.

Utah Code Ann. § 63–30–11(3)(a) provides that a notice of claim shall contain (1) a brief statement of the facts, (2) the nature of the claim asserted, and (3) the damages incurred by the claimant so far as they are known. The purpose of a notice of claim is to give timely notice of the above requirements so that the state or one of its political subdivisions may conduct an investigation. In this case, that purpose was fulfilled. The notice of claim given by the Morenos stated the facts surrounding Bill's drowning and made claim for his wrongful death. Amounts of damage were stated for his hospitalization, medical care, funeral, and loss of companionship. Because the Morenos were laboring under a mistake of law, they claimed damages for *their* loss of companionship rather than for the heir's loss.

We hold that the notice of claim is sufficient to support the wrongful death action filed by the Morenos even though we have now decided that Bill's heirs, not the Morenos, are the beneficiaries. Since section 78–11–6 authorizes a guardian to maintain an action for the wrongful death of his ward, it follows that the guardian has the authority to file the prerequisite notice of claim. The

notice here was timely filed, set out the facts and the nature of the claim, and stated the damages incurred by the claimant "so far as they are known." The Morenos, acting upon the advice of legal counsel and in good faith, erroneously claimed damages for their loss of companionship because of their misapprehension of the law. This should not be fatal since irrespective of who the beneficiaries of a wrongful death action are, the damages claimed for medical, hospitalization, and funeral costs do not change. Only the damages for loss of companionship might differ. In fact, because of Bartlett's detachment from Bill, her damages might well be less than those of the Morenos. Therefore, no prejudice can be shown to the School District because the claim was filed by the Morenos in their own behalf rather than in a representative capacity for Bartlett or Bill's heirs.

We hold that the notice of claim given to the School District was legally sufficient to support the maintenance of this wrongful death action, although the Morenos mistakenly assumed that they, not Bartlett, would be the beneficiaries of the action.

STEWART, Associate C.J., and DURHAM, J., concur.