417 P.2d 756

Marielle LeBOUTHILLIER, and Denise, Gisele, Victor and Susanne LeBouthillier, minors, by their Guardian Ad Litem, Elaine K. Wood, Plaintiffs and Appellants,

v.

SHURTLEFF AND ANDREWS, INC., a corporation, Defendant and Third-Party Plaintiff and Respondent,

v.

PETER KIEWIT CONSTRUCTION CO. et al., Third-Party Defendants.

Gloria OLIVER, Plaintiff and Appellant,

v.

SHURTLEFF AND ANDREWS, INC., a corporation, Defendant and Third-Party Plaintiff and Respondent,

v.

PETER KIEWIT CONSTRUCTION CO. et al., Third-Party Defendants.

No. 10363.

Supreme Court of Utah.

Sept. 1, 1966.

Draper, Sandack & Saperstein, Salt Lake City, for appellants.

Hanson & Baldwin, Salt Lake City, for respondent.

Christensen & Jensen, Salt Lake City, for Kiewit, for third-party defendants.

CALLISTER, Justice.

Plaintiffs, the surviving widows and children of two men killed in an accident involving a crane at the construction site of Flaming Gorge Dam, initiated actions to recover damages for wrongful death. Plaintiffs appeal from a verdict and judgment rendering Shurtleff and Andrews, Inc., not liable. Since the facts involved were the same in both cases they were consolidated for trial. The actions were commenced by the plaintiffs and appellants herein only against the defendant and third party plaintiff Shurtleff and Andrews, Inc. Shurtleff and Andrews were allowed to interplead over the objections of appellants herein, the Arch Dam Constructors, the decedents' employer, as third party defendant. The Arch Dam Constructors is a joint venture consisting of Peter Kiewit & Sons, Morrison Knudson, Inc. and Midwest Valley, Inc.

The record discloses that the crane involved in the accident was owned by Shurtleff and Andrews and leased to the Arch Dam Constructors. Under the provisions of this lease, Arch Dam Constructors agreed to keep the equipment in good repair and be liable for any damages to persons or property while the equipment was in its posses-

sion. This crane had been brought to the site of the Flaming Gorge Dam by employees of Shurtleff and Andrews in July 1962. They obtained employment from the companies which had leased the equipment to work on the machinery because of their familiarity with its operation. When the Arch Dam Constructors leased the crane in question from Shurtleff and Andrews, in January 1963, the boom and jib, which are appendages attached to the crane cab area (the boom is the first long arm and the jib a second smaller appendage attached to the boom), were not assembled; but former employees of Shurtleff and Andrews, who came to the Flaming Gorge Dam site with the machine and were employed by Arch Dam Constructors, aided other employees in assembling the boom and jib. After the boom and jib had been assembled in January 1963, the crane had been used by the Arch Dam Constructors in pouring concrete. On the day of the accident, March 29, 1963, it was being used by the Arch Dam Constructors to move a heavy trash gate. The trash gate had been hooked and the load rotated a few feet to the left and set down, when the jib suddenly came back nearly in line with the boom section, broke off and fell on LeBouthillier and Oliver, who, at the time were helping to put an outrigger on the crane, and killed them.

All witnesses, who testified on the subject, recalled at some time seeing a jib fall, but none had ever seen one completely break off from its connection with the boom. The day the accident occurred was windy and gusty, but that condition was not unusual at the site. The investigation, which was made after the accident, revealed that a part of the "ear" connecting the jib and boom was elongated, rusty and broken. The fact that it was rusty and elongated indicated it was worn and defective. It was admitted that if such condition had been noted at the time of the assemblage of the boom with the jib, that connection should not have been used. The defective condition of the "ear" revealed after the accident, would not have developed in a short period of time. There was evidence from which it could reasonably be found that at times between rentals of the crane by users at the Flaming Gorge Dam site, the crane was moved by Shurtleff and Andrews over rough roads with the boom and jib assembled and that such a practice could have caused the elongation of the ear. On the other hand, there was evidence in the record from which a jury could reasonably have found that the unfamiliarity of the operator, assigned that day by Arch Dam Constructors to work on the crane with a "special power" lever which required manual centering, might, because of incorrect operation, have caused the jib to fall backward.

One of the instructions given by the court to the jury stated that if they found the accident happened because of faulty operation of the crane by an em-

ployee of Arch Dam Constructors, then Shurtleff and Andrews could not be held responsible for any such negligence of Arch Dam. The court also gave the following instruction about the defective connection developed in the evidence:

"If you find the joint connecting the jib to the boom was defective when the crane was leased to Arch Dam which constituted negligence on the part of Shurtleff and Andrews, and if you further find that upon receiving possession of the crane, or thereafter during its use, Arch Dam knew or should have known of said defect, if any, and the danger involved in continuing the use of said crane in such defective condition, such conduct of Arch Dam would be the efficient intervening cause and not the proximate cause of the accident and plaintiff's resulting damage, and Shurtleff and Andrews may not be held responsible."

After instructing the jury, the case was submitted on a special verdict and special interrogatories, in answer to which the jury found that the accident was not unavoidable; that Shurtleff and Andrews were negligent in failing to inspect the crane prior to its delivery to Arch Dam Constructors for any defects which might be discovered and repaired before delivery, so that the crane would be safe to use by and around its employees; but that such negligence was not the proximate cause of the accident. There is sufficient evidence in the record to sustain the finding of the jury that the negligence of Shurtleff and Andrews was not the proximate cause of the accident. The court did give certain instructions to the jury defining correctly the principle of "proximate cause," and, although it might be concluded that the court erred in giving the instruction quoted above, in view of the evidence and all the instructions taken together, it is our opinion that the error did not adversely affect the substantial rights of the parties and was not prejudicial. Unless an error is prejudicial, a judgment will not be reversed by this court.[1]

Affirmed. No costs awarded.

HENRIOD, C. J., and McDONOUGH and CROCKETT, JJ., concur.

TUCKETT, J., does not participate herein.

1. Unless an error, if committed, would have such an adverse effect upon the trial that there is a reasonable likelihood that a different result would have been reached, the verdict of the jury must be sustained. Brunson v. Strong, 17 Utah 2d 364, 412 P.2d 451, 1966.